JOYCE N. DOLSON AND BEN DOLSON, JR., PLAINTIFFS-APPELLANTS, v. CASPER ANASTASIA, DEFENDANT-RESPONDENT.

Argued September 9, 1969—Decided November 17, 1969.

*Mr. William T. Wichmann* argued the cause for plaintiffs-appellants (*Messrs. Wise, Wise, Wichmann & Berich,* attorneys; *Mr. Wichmann,* of counsel).

*Mr. Robert V. Carton* argued the cause for defendant-respondent (*Messrs. Carton, Nary, Witt & Arvanitis,* attorneys; *Mr. Carton,* of counsel).

The opinion of the court was delivered by

HALL, J. This is a motor vehicle rear end collision case. A car operated by the defendant ran into one driven by the plaintiff Joyce Dolson, which was proceeding in the same line of traffic. She sued for personal injuries and her husband, the co-plaintiff, for consequential damages. The jury returned a verdict of no cause for action and the trial court denied plaintiffs' motion for a new trial made on the ground that the verdict was against the weight of the evidence. The Appellate Division affirmed, one judge dissenting. In addition to the main opinion, a concurrence was filed by the other judge who voted to affirm. All three opinions are unreported. The case is here by reason of the dissent. *R. R.* 1:2-1(b), now *R.* 2:2-1(a)(2).

The basic issue before us concerns the standard to be applied by the appellate court in reviewing a trial court's action on a motion for a new trial following a jury verdict. The question has been a confused one in view of seemingly differing expressions in a succession of opinions dealing with the subject. The latest of these is *Kulbacki v. Sobchinsky,* 38 *N. J.* 435 (1962), which has been read to severely restrict the scope of appellate review in such situations. The main opinion in the case at bar followed this view, holding that, under the appellate standard supposedly there prescribed, the trial court's action could not be disturbed. The dissenter concluded that, even despite such strictures on appellate review, there had been a denial of justice calling for a reversal of the trial court's determination and a new trial.

The concurring judge projected the issue squarely. His entire opinion reads:

"If I were the trial judge, I would have granted plaintiffs' motion for a new trial. However, he did not, and in the light of *Kulbacki v. Sobchinsky*, 38 *N. J.* 435 (1962), I agree we must affirm."

We take this to mean that he believed that the verdict was against the weight of the evidence so as to constitute a denial of justice, but that, because the trial judge decided otherwise, even though wrongly, the supposed limitations on appellate review precluded so holding. In view of the evidence here, this amounts to saying that there is almost a complete bar to appellate interference with lower court action on a new trial motion. This is an erroneous view of the appellate role and indicates the need for clarification and restatement of the proper standard.

Reference should first be made to the distinction between a motion for a new trial after a jury verdict as against the weight of the evidence (*R.* 4:49–1(a)) and a motion for involuntary dismissal at the end of the plaintiff's case (*R.* 4:37–2(b)), a motion for judgment at the close of all the evidence or at the close of the evidence offered by an opponent (*R.* 4:40–1), or a motion for judgment notwithstanding the verdict (*R.* 4:40–2). In the case of motions for involuntary dismissal, the test is, as set forth in *R.* 4:37–2(b) and equally applicable to motions for judgment, whether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in * * * favor" of the party opposing the motion, *i. e.,* if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. *Bozza v. Vornado, Inc.,* 42 *N. J.* 355 (1964); *Bell v. Eastern Beef Co.,* 42 *N. J.* 126 (1964); *Franklin Discount Co. v. Ford,* 27 *N. J.* 473, 490 (1958). The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with

its existence, viewed most favorably to the party opposing the motion.

The trial judge's obligation on a motion for a new trial because the verdict is said to be against the *weight* of the evidence is quite a different and more difficult one. It is clear that such a motion may be properly granted although the state of the evidence would not justify the direction of a verdict. *Franklin Discount Co. v. Ford, supra* (27 *N. J.,* at 490). A process of evidence evaluation, —"weighing"—, is involved, which is hard indeed to express in words. This is not a *pro forma* exercise, but calls for a high degree of conscientious effort and diligent scrutiny. The object is to correct clear error or mistake by the jury. Of course, the judge may not substitute his judgment for that of the jury merely because he would have reached the opposite conclusion; he is not a thirteenth and decisive juror. It was said in *Kulbacki,* "[w]hat the trial judge must do is canvass the record, not to balance the persuasiveness of the evidence on one side as against the other, but to determine whether reasonable minds might accept the evidence as adequate to support the jury verdict * * *." 38 *N. J.,* at 445. This does not mean that the test is the same as on a motion for judgment. Rather what was meant was that in ruling on a motion for a new trial, the trial judge takes into account, not only tangible factors relative to the proofs as shown by the record, but also appropriate matters of credibility, generally peculiarly within the jury's domain, so-called "demeanor evidence", and the intangible "feel of the case" which he has gained by presiding over the trial. The whole process is well summed up in the dissenting opinion in *Kulbacki*: "the question is whether the result strikes the judicial mind as a miscarriage of justice, * * *", 38 *N. J.,* at 459. This is the standard intended to be conveyed by *R.* 4:49–1(a), although expressed negatively and somewhat redundantly: "The trial judge shall not, however, set aside the verdict of a jury as against the weight of the evidence unless, having given due regard to

the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law." The rule might be more precisely stated as "the trial judge shall grant the motion, if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly appears that there was a miscarriage of justice under the law."

The standard governing an appellate tribunal's review of a trial court's action on a new trial motion is essentially the same as that controlling the trial judge. *Hager v. Weber,* 7 *N. J.* 201, 212 (1951) very correctly so held, at the same time putting to rest all constitutional questions and casting aside any more restrictive "abuse of discretion" test. We say the test is "essentially the same", because where certain aspects are important — witness credibility, "demeanor", "feel of the case", or other criteria which are not transmitted by the written record —, the appellate court must give deference to the views of the trial judge thereon. His decision, however, is not entitled to any special deference where it rests upon a determination as to worth, plausibility, consistency or other tangible considerations apparent from the face of the record with respect to which he is no more peculiarly situated to decide than the appellate court. To quote again from the dissenting opinion in *Kulbacki,*

"A motion for a new trial must be made to the trial judge before the issue may be offered on appeal. * * * The reason is that the trial judge has the feel of the case and is better situated than an appellate court to assay credibility when credibility is pivotal. Accordingly a reviewing court must take into account the views of the trial judge insofar as firsthand observation may be significant, but, having done so, it remains the duty of the reviewing court to determine whether in its view there was a manifest denial or miscarriage of justice. *Fisch v. Manger,* 24 *N. J.* 66, 80 (1957) ; Brochin and Sandler, 'Appellate Review of Facts in New Jersey, Jury and Non-Jury Cases', 12 *Rutgers L. Rev.* 482, 503 (1958)." (38 *N. J.*, at 459–460).

It consequently behooves the trial judges in deciding new trial motions to spell out fully the reasons for their de-

terminations so that reviewing tribunals may be advised of the extent to which factors entitled to deference entered into the decision.

The two cases most frequently cited as laying down a restricted scope of review contrary to *Hager* are *Hartpence v. Grouleff,* 15 *N. J.* 545 (1954) (which did not cite *Hager*) and *Kulbacki* (38 *N. J.,* at 446-452), previously mentioned. The following language in *Hartpence,* quoted in *Kulbacki,* is generally referred to as the source of the restrictive concept: the trial court's "action should not be disturbed unless it clearly and unequivocally appears there was a manifest denial of justice under the law." (15 *N. J.,* at 549). In both cases, the real question was whether a conclusion of negligence on the part of the defendant was irresistible from the proofs or whether a jury could reasonably and fairly reach the opposite conclusion. In each the Appellate Division and this court in fact did canvass the record for this purpose, in line with the scope of appellate review laid down by *Hager,* and simply reached different conclusions thereon. In *Kulbacki,* differing views of the proofs on this score really constituted the only difference between the majority and the dissenters. Credibility of witnesses or other intangible factors within the peculiar province of the trial judge did not enter into either case.

Statements in the opinions therein speaking of the limited scope of review in an appellate tribunal were quite unnecessary and misleading. To the extent that these expressions and similar ones in other opinions may be thought to limit the scope of appellate review beyond the extension of deference to the trial court's view on those factors in the case as to the evaluation of which it was peculiarly situated to determine, they do not represent the law of the state. The provision in *R.* 2:10–1 of the Rules Governing Appellate Practice, also expressed negatively and redundantly, that "[t]he trial court's ruling on such a motion shall not be reversed unless it clearly and unequivocally appears that there was a manifest denial of

justice under the law" means no more than what we have just said.

It is thus obvious that the proper standard of appellate review was not applied in the main opinion of the Appellate Division or in the concurrence. While we cannot be sure what result the main opinion writer would have reached had he used the appropriate test, it is clear that the concurring judge would have voted, as did the dissenter, to reverse the trial court and direct a new trial. Our own review of the record convinces us that such a result is eminently correct.

The only witnesses who testified on the liability phase were Mrs. Dolson and defendant, the sole occupants of the vehicles involved. Their testimony was quite sparse; neither was a particularly responsive or articulate witness. The weather was drizzling; the time was mid-afternoon. Both agreed that each was proceeding southerly on a four lane highway approaching an intersection controlled by a traffic light, she in the outside lane and he in the inside lane. Both also agreed that several hundred feet north of the intersection she pulled into the inside lane a considerable number of car lengths ahead of him and that they both continued at that same distance between the cars and at the same speed until near the intersection. She testified she desired to turn left, came to a stop to await the proper light and to allow northbound traffic to pass, looked in her rear view mirror and saw no car following her, and after a few seconds was hit in the rear by defendant. She was not asked whether she had turned on her left turn directional signal.

The defendant testified that as Mrs. Dolson neared the intersection her speed was "a slowing * * * almost a stopping speed" and that her brake lights "blinked on and off." He did not see any directional turn signal in operation. He said "Well, when I applied my brakes, my car was slowing down and then for some reason or other it hit a slipping spot which could have been an oil slick. That

automatically crashed me into Mrs. Dolson's car." (There was no evidence of an oil slick on the highway. This conclusory testimony about an oil slick, although not objected to, had no place in the case.) He did not testify that Mrs. Dolson came to a sudden stop so that he could not apply his brakes in time to avoid a collision, nor did he say that he thought she intended to proceed slowly through the intersection rather than stopping or turning. (Any such testimony of his belief, if the fact, would be admissible in explanation of his own conduct, although it is at least doubtful whether it alone would negate negligence; in any event without such testimony no inference to that effect, as defendant urges, is legitimate.)

There is no doubt the impact was slight. The Dolson car was not moved significantly by it and both vehicles were able to continue on their respective ways. Mrs. Dolson's credibility as to her necessarily limited version of the happening of the accident was not shaken to any extent by cross-examination. This is in contrast to that relating to her claim of injuries, past and present complaints and physical deficiencies said to result from the accident — the subject which consumed most of the trial time and evidence.

■ It is elementary that a following car in the same lane of traffic is obligated to maintain a reasonably safe distance behind the car ahead, having due regard to the speed of the preceding vehicle and the traffic upon and condition of the highway. *Stackenwalt v. Washburn*, 42 *N. J.* 15, 30 (1964). Failure to do so resulting in a collision, *is* negligence and a jury should be so instructed. *N. J. S. A.* 39:4–89, when it provides that "[t]he driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and condition of, the highway", merely incorporates the common law standard into the motor vehicle law to authorize penal sanctions for a violation. This does not mean, however,

that such conduct is only *evidence* of negligence because it violates a statute. (It may be observed that the trial judge here charged, wrongly, although the instruction was not objected to, that following another vehicle more closely than is reasonable and prudent under the circumstances in violation of the cited statute is only *evidence* of negligence.)

We find defendant's negligence apparent from his own testimony. The dissenting judge put it well in this language:

"Defendant, by his own words, was fully aware of the presence of plaintiff on the highway, knew she was slowing down or stopping, and saw the rear lights of her car blinking off and on.

"The purpose of signals is to alert following cars. Defendant was, or should have been, fully alerted to the fact that plaintiff was either going to stop or turn, and I can see no reason whatever for this rear-end collision other than defendant's failure to keep his car under such control as would have reasonably enabled him to avoid striking a vehicle which was at all times plainly within his view."

And we further agree with the conclusion of the dissenting judge that there was no sufficient evidence of contributory negligence on the part of Mrs. Dolson which proximately contributed to the collision. The trial judge charged that failure on her part to signal her intention to turn left in violation of *N. J. S. A.* 39:4–126 might be considered as evidence of contributory negligence. Although again no objection was made to the instruction, we think it was inappropriate because of the absence of testimony by the defendant that he was in any way misled by her failure and agree with the dissenting judge that there was no causal connection between the alleged failure and the collision.[1]

The trial judge in denying the motion for a new trial laid great stress on the weakening of Mrs. Dolson's credi-

[1] We do not consider the question whether plaintiffs were entitled to a binding instruction as to liability on the basis of defendant's own testimony and the absence of any proximately related contributory negligence, *Lino v. Morris*, 68 *N. J. Super.* 155 (App. Div. 1961), since no motion to that effect was made at the trial and the contention has not been advanced on appeal.

12

bility, which, however, as we have pointed out, concerned only her testimony as to injuries and damages and not, in any significant degree, as to the happening of the accident. It is clearly erroneous for a jury to disregard uncontradicted testimony by the defendant himself on the issue of liability merely because of disbelief of plaintiffs' damage testimony. In such event a new trial is required. *Gash v. Khan,* 10 *N. J. Misc.* 708, 160 *A.* 367 (*Sup. Ct.* 1932). This factor in the case, coupled perhaps with the inappropriate instructions we have referred to and the general failure of the charge to relate the abstract legal principles to the evidence, *Jurman v. Samuel Braen, Inc.,* 47 *N. J.* 586, 591–592 (1966), may well have caused this jury to go awry.

We are satisfied beyond any doubt that the verdict was against the weight of the evidence so as to constitute a miscarriage of justice and that the trial court was in error in denying the motion for a new trial.

The judgments of the Appellate Division and the Law Division are reversed and the case is remanded for a new trial.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and HANEMAN.—6.

*Opposed*—NONE.