153 N.J. Super. 539 (1977)
380 A.2d 713
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDMUND SECULA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 31, 1977.
Decided November 10, 1977.
*541 Before Judges ALLCORN, MORGAN and HORN.
Messrs. Belsole & Herb, attorneys for appellant (Mr. Donald R. Belsole, on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Barry T. Albin, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant appeals from his convictions, by jury, of misconduct in office (N.J.S.A. 2A:85-1), obstruction of justice (N.J.S.A. 2A:85-1), and conspiracy to obstruct justice (N.J.S.A. 2A:98-1, 2A:98-2 and 2A:85-1). He contends that (1) the trial judge erred in denying his motion for acquittal at the conclusion of the State's case, pursuant to R. 3:18-1; (2) the jury verdict was against the weight of the evidence, and (3) certain remarks made by the prosecutor in summation were so prejudicial as to deny him a fair trial.
During all periods pertinent to this matter defendant was chief of police of the Borough of Mount Arlington. During the period of his incumbency, and more particularly between *542 December 1973 and July 1974, his department was investigating a rash of fires of suspicious origin, ultimately numbering 26. By July 1974 the two investigating patrolmen had focused their efforts on one prime suspect, John Rooney, the 22-year-old son of the Mayor of Mount Arlington. Lacking sufficient evidence for a conviction, however, they sought permission from defendant to question Rooney about the fires. Permission was granted, and on July 23, 1976 the interrogation took place. At first Rooney indicated he might be willing to make a statement but wished to discuss the matter with his father. The following day, however, when Rooney returned to the police station, he stated that he had changed his mind, denied involvement with the fires and volunteered to take a polygraph test. The patrolmen decided to release him, arrange for surveillance and arrange a polygraph examination. While conferring with defendant a Lt. Morgan arrived, overheard the conversation concerning plans to deal with Rooney, and volunteered his services in persuading Rooney to be cooperative since he had known Rooney's family for several years. Defendant authorized him to do so.
During the early portions of Morgan's conversation with Rooney, Rooney persisted in his denying culpability for the fires. Morgan's efforts continued by assuring defendant that all he wanted was for the fires to stop, and he promised Rooney that no charges would be brought against him and no publicity given to any statement Rooney might make. Morgan consulted with defendant concerning his authority to make these promises. Defendant agreed, authorizing what in substance was a promise of immunity from prosecution for the fires and attendant publicity for any statement Rooney might make. The promise was then repeated to Rooney, but it was conditioned upon Rooney obtaining psychiatric care as well as upon the making of a statement. Because Rooney questioned Morgan's authority to make such promises, Morgan again consulted defendant. He was again authorized to promise Rooney immunity from prosecution for all *543 matters connected with the statement he would make. Immediately thereafter Rooney confessed his guilt as to the setting of the fires.
Defendant instructed Morgan and the two investigating patrolmen not to reveal that Rooney had confessed. He and Morgan repeated the promise to Rooney's parents and thereafter abided by the terms of their agreement with Rooney. No complaints were ever filed against Rooney. Although it was defendant's responsibility to do so, he did not notify the county prosecutor's office that some of the fires had been started by an arsonist and that they had identified the arsonist. That information was not released to the owners or insurers of the burned buildings or the municipal governing body. The tape recording of the confession, the only available copy, was locked in defendant's desk; only defendant and Morgan had access to it. The two investigating patrolmen were cautioned about disclosing to anyone the fact or contents of the confession.
The grand jury named Morgan as an unindicted coconspirator, indicted defendant for misconduct in office, obstruction of justice and conspiracy to obstruct justice, and indicted the mayor for conspiracy to obstruct justice. At the trial the two patrolmen and Morgan were the State's principal witnesses; no witnesses were presented by the defense. The jury found the mayor not guilty and defendant guilty of all counts.
When reviewing the trial judge's denial of defendant's motion for acquittal, this court must determine whether the evidence, viewed in its entirety, be it direct or circumstantial, and giving the State the benefit of all of its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, is sufficient to enable a jury to find that the charge has been established beyond a reasonable doubt. State v. Reyes, 50 N.J. 454, 458-59 (1967); State v. Rodriguez, 141 N.J. Super. 7, 11 (App. Div. 1976). We are satisfied that the trial judge properly denied defendant's motion in this instance.
*544 Defendant compares his actions here to a plea bargain and describes his conduct as constituting, at worst, an honest mistake in judgment or an innocent error in the exercise of a police chief's reasonable discretion. It must be stressed, however, that a police officer is not invested with discretion to decide whether the law should be enforced; he is obligated to take such lawful action as in his discretion and in the exercise of good faith and reasonable diligence is necessary to bring criminals to justice. A police officer's discretion is limited to the determination of the steps to be taken to that end. State v. Orecchio, 27 N.J. Super. 484, 492-93 (App. Div. 1953), aff'd 16 N.J. 125 (1954). Indeed, not even a county prosecutor may offer immunity to a witness without the written approval of the Attorney General. N.J.S.A. 2A:81-17.3. Therefore, defendant's promise of immunity from prosecution was an act totally beyond the scope of his lawful discretion.
Defendant argues that the State's proofs failed to include evidence from which the jury could infer the necessary criminal intent, urging that the only motivation shown in the record for his actions was the desire to stop the fires. We conclude otherwise. The required criminal intent could have been inferred from defendant's knowledge that Rooney was the Mayor's son, from the repetition of the promise of immunity to Rooney's parents, from defendant's concealment of the fact and contents of the confession, and from his failure to report the matter to the county prosecutor. From all this, the jury was free to conclude that defendant's conduct was done as a favor to the Mayor and not for the purpose of stopping the fires. Evidence of personal gain or benefit is unnecessary. State v. Schultz, 71 N.J. 590, 601 (1976).
We, therefore, conclude that the verdict was adequately supported by the record. State v. Sims, 65 N.J. 359, 373 (1974); Dolson v. Anastasia, 55 N.J. 2, 6-7 (1969).
Although the prosecutor's remark here challenged did exceed the bounds of the evidence, State v. Farrell, 61 N.J. *545 99, 102 (1972), any possibility that the jury's verdict was influenced thereby was dissipated by the trial judge's immediate sustaining of defendant's objection and instruction to the jury to disregard the remark and his subsequent charge that the jury decide the case upon their own recollection of the facts. R. 2:10-2; State v. Gosser, 50 N.J. 438, 451 (1967), cert. den. 390 U.S. 1035, 88 S.Ct. 1434, 20 L.Ed.2d 295 (1968).
Affirmed.