> **NOT FOR PUBLICATION WITHOUT THE**
> **APPROVAL OF THE APPELLATE DIVISION**
>
> This opinion shall not "constitute precedent or be binding upon any court."
> Although it is posted on the internet, this opinion is binding only on the
> parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0516-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JASON ASKEW,

    Defendant-Appellant.

_____

Submitted December 20, 2016 — Decided  March 23, 2017

Before Judges Yannotti and Kennedy.

On appeal from Superior Court of New Jersey,
Law Division, Passaic County, Indictment No.
13-02-0102.

Fusco & Macaluso Partners, LLC, attorneys for
appellant (Amie E. DiCola, on the brief).

Camelia M. Valdes, Passaic County Prosecutor,
attorney for respondent (Marc A. Festa, Senior
Assistant Prosecutor, of counsel and on the
brief).

PER CURIAM

    Defendant Jason Askew was tried before a jury and found guilty on two counts of second-degree leaving the scene of a motor vehicle accident under circumstances resulting in the death of two

individuals, and other offenses. Defendant was sentenced to an aggregate term of nineteen years of incarceration. He appeals from the judgment of conviction dated September 2, 2014. We affirm.

I.

A Passaic County grand jury charged defendant with second-degree leaving the scene of a motor vehicle accident under circumstances that resulted in death to Jose Fernandez-Minaya, contrary to N.J.S.A. 2C:11-5.1 (count one); second-degree leaving the scene of a motor vehicle accident under circumstances that resulted in death of Jhasleidy Benjumea-Bastidas, N.J.S.A. 2C:11-5.1 (count two); third-degree injuring a person (Fernandez-Minaya), and leaving the scene of the injury knowing the person is physically helpless, N.J.S.A. 2C:12-1.2(a) (count three); third-degree injuring a person (Benjumea-Bastidas), and leaving the scene of the injury knowing the person is physically helpless, N.J.S.A. 2C:12-1.2(a) (count four); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1) (count five); and fourth-degree tampering with evidence, N.J.S.A. 2C:28-6(1) (count six).

Defendant was tried before a jury. The following evidence was presented at trial. On the evening of March 16, 2012, Benjumea-Bastidas and Fernandez-Minaya celebrated a birthday with two friends, A.F. and E.V. They went to a club and left in a car being

driven by Benjumea-Bastidas. After dropping off another person, they became lost. Benjumea-Bastidas got into an argument with E.V. and they exited the vehicle. A.F. and Fernandez-Minaya also exited the car. They followed Benjumea-Bastidas and tried to get her to return to the car. A.F. and E.V. then walked back to the car, but Benjumea-Bastidas and Fernandez-Minaya remained at the corner of Seventh Avenue and Route 46 East.

While A.F. was speaking to E.V. near the car, they heard a loud noise coming from where Benjumea-Bastidas and Fernandez-Minaya had been speaking. A.F. testified that the noise sounded like a "crash had occurred." She turned around and did not see Benjumea-Bastidas and Fernandez-Minaya standing on the corner. A.F. and E.V. went to look for them and found them stretched out on the ground. A.F. did not see any stopped car in the road, nor did she see the car that apparently struck Benjumea-Bastidas and Fernandez-Minaya.

At 3:57 a.m., on March 17, 2012, Officer Alex Zamora of the Clifton Police Department (CPD) received a radio dispatch from another officer, who indicated that two people had been found lying on the highway. Zamora went to the scene. He observed a male lying on the left lane and a female lying on the right lane of the

highway. The bodies were about fifty feet apart. The other officer was attending to the female.

Zamora went to assist the male. According to Zamora, the male was unresponsive and he did not detect a pulse. When he arrived, Zamora did not see any other vehicles on the roadway. No vehicles returned to the scene, and Zamora did not observe a damaged vehicle in the area.

Officer William Bais of the CPD, whose responsibilities included the investigation of fatal motor vehicle accidents, was informed of the accident at around 4:00 a.m. on March 17, 2012. When he arrived at the scene, the victims' bodies had already been removed. The police recovered forty-nine pieces of evidence from the scene, including a piece of a clear mirror, a small piece of gray silver plastic, and a piece of a plastic mirror.

Bais later determined that the parts were from a 2002 to 2005 black Cadillac Escalade. From the New Jersey Department of Transportation, Bais obtained a list of 2002 to 2005 Cadillac Escalades that were registered in New Jersey. With the help of another officer, he began to check the residences associated with the vehicles. They determined that defendant may be the owner of the vehicle involved in the accident.

A-0516-14T1

Bais went to a residence in Paterson and spoke with the owner, who said that defendant was his tenant and defendant's vehicle had been involved in an accident several weeks earlier. Bais located defendant at his place of employment and brought defendant to police headquarters. Defendant was wearing a blue New York Yankees jacket, with white leather sleeves.

Defendant admitted he was an owner of a Cadillac Escalade, and the vehicle had been involved in an accident on March 17, 2012. Defendant claimed his vehicle struck a deer on Route 19 South. He said the vehicle was at an auto body shop in Newark. Defendant also stated that on the night of the accident, he had been at the Holiday Inn in Totowa and Six Brothers Diner. The police obtained surveillance videos from both locations.

In the Holiday Inn video recorded on March 17, 2012, defendant was seen in the lobby by the bar and outside the hotel. Defendant was wearing the same jacket he was wearing when he met the police for his interview. Defendant's vehicle also was seen in the video. It was not damaged. The Totowa Holiday Inn is located on Route 46.

The video from Six Brothers Diner shows defendant entering the diner at 2:59 a.m. on March 17, 2012. He is also seen leaving the diner between 3:46 a.m. and 3:50 a.m. on that date. The diner is located about 2.3 miles from the accident site. Testimony

established that the crash site is about a three-minute drive from the diner. As noted previously, Zamora was dispatched to the accident scene at 3:57 a.m. on March 17, 2012.

Bais went to the auto body shop to inspect defendant's vehicle, which was still in a damaged condition. Bais found documents in the car, which indicated that it was a 2003 Cadillac Escalade and defendant was its registered owner.

Bais also collected evidence from the vehicle, which included hair on the damaged hood, hair on the headlight plug, and a broken headlight casing with hair. Bais also recovered hair from the vehicle's undercarriage. The hairs were sent to a laboratory for analysis.

Bais testified that he matched the piece of the vehicle's grill found at the scene of the accident with a piece of the grill recovered from the auto body shop. He also matched a piece of the lens of the light housing found at the scene with the light housing recovered at the body shop.

Detective Timothy McConnell of the vehicular homicide unit in the Passaic County Prosecutor's Office was assigned to investigate the accident. He inspected the area and noted numerous pieces of vehicle debris and personal items that apparently belonged to the victims.

A-0516-14T1

McConnell said there were no defects or significant damage that would affect the ability to drive on the road. He noted that the speed limit in the area was thirty-five miles per hour, and the area was primarily residential and commercial. He did not observe any tire or skid marks. The debris covered four lanes of travel, and was spread over 221 feet.

About sixteen days after the collision, Sergeant Michael Bienkowski of the CPD searched the entire length of Route 19 in the area of the accident to determine if there was any evidence that a vehicle had struck a deer. Bienkowski found no deer remains or pieces of a vehicle that may have been recently deposited in the area. He also searched several streets in Clifton, and checked to see if there were any reports of an animal on Route 19 at the time of the accident. He found none.

A State Police DNA forensic scientist analyzed some of the evidence collected in the investigation. A partial DNA profile was extracted from hair recovered from the undercarriage of defendant's vehicle. It matched Benjumea-Bastidas's DNA. The forensic scientist said that this hair could not have come from an animal.

Dr. Di Wang, an assistant medical examiner, performed an autopsy on Benjumea-Bastidas. He observed multiple contusions and

     A-0516-14T1

abrasions on her face and similar injuries on almost all parts of her body. He found multiple internal injuries, including seven fractured ribs and a completely severed spinal cord. He said the rib fractures and spinal-cord injury he found are typically the result of a very strong force, and were consistent with a pedestrian being struck by a vehicle traveling at a high rate of speed.

Dr. Wang also noted a number of injuries to Benjumea-Bastidas's internal organs, including injuries to the spleen, liver, heart, and lungs. He opined that the cause of her death was multiple force injuries to the head, torso and extremities. He said that, even with prompt medical intervention, Benjumea-Bastidas would not have survived more than a minute after impact.

An autopsy also was performed upon Fernandez-Minaya. It revealed that he suffered blunt force trauma to the head and neck, which would have been fatal. He also sustained blunt force trauma to the chest, resulting in multiple rib fractures, pulmonary contusions, and other injuries. These injuries also would have been fatal. Fernandez-Minaya had other internal injuries and multiple fractures of his arms and legs. The autopsy found that Fernandez-Minaya's death was due to multiple injuries, consistent

A-0516-14T1

with a pedestrian being struck by a vehicle traveling at a high rate of speed.

Defendant presented one witness, a former pizzeria customer, who claimed that she was shocked when she heard about the accident.

The jury found defendant guilty on all counts. Thereafter, the judge sentenced defendant to five years on both counts one and two, and three-years each on counts three, four, and five. Count six was merged into count five. The judge ordered that all of the sentences be served consecutively.

Defendant appeals and argues:

> POINT I:  THE COURT SHOULD REVERSE MR. ASKEW'S CRIMINAL JUDGMENT OF CONVICTION BECAUSE THE JURY'S VERIDCT IS AGAINST THE WEIGHT OF THE EVIDENCE AND THE STATE HAS FAILED TO MEET ITS BURDEN OF PROOF, NAMELY THAT MR. ASKEW IS GUILTY OF THE ALLEGED CHARGES BEYOND A REASONABLE DOUBT.
>
> A. The State has failed to prove beyond a reasonable doubt that Mr. Askew is guilty of two counts of Leaving the Scene of a Motor Vehicle Accident Resulting in Death, contrary to N.J.S.A. 2C:11-5.1, and two counts of Leaving the Scene of a Motor Vehicle Accident Resulting in Endangering and Injuring a Victim, contrary to N.J.S.A. 2C:12-1.2(a).
>
> B. The State has failed to prove beyond a reasonable doubt that Mr. Askew is guilty beyond a reasonable doubt of Hindering Apprehension, contrary to N.J.S.A. 2C:29-3(b)(1) and Tampering with Evidence, contrary to N.J.S.A. 2C:28-6(1).

As noted, defendant argues that the State failed to meet its burden of proving each element of the charges under both N.J.S.A. 2C:11-5.1 and N.J.S.A. 2C:12-1.2(a). Defendant argues that because the jury's verdict is against the weight of the evidence, it should be deemed the result of mistake, passion, prejudice, or partiality.[1]

A trial court may not set aside a jury's verdict and order a new trial "unless it clearly and convincingly appears that there was a manifest denial of justice under the law." State v. Sims, 65 N.J. 359, 373-74 (1974). A new trial is warranted only if the jury's verdict represents a "miscarriage of justice." Dolson v. Anastasia, 55 N.J. 2, 7 (1969).

In ruling on a motion for a new trial, the trial court must determine:

> [w]hether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as of the favorable inferences which reasonably could be drawn therefrom, a

---

[1] We note that defendant failed to move for a new trial on the ground that the jury verdict is against the weight of the evidence. Strictly speaking, defendant is precluded from raising this argument for the first time on appeal. R. 2:10-1; State v. Perry, 128 N.J. Super. 188, 190 (App. Div. 1973), aff'd, 65 N.J. 45 (1974). We have elected, however, to address defendant's arguments.

> reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 459 (1967) (citation omitted).]

We apply the same standard when reviewing a trial court's decision on a motion for a new trial. Dolson, supra, 55 N.J. at 7.

With regard to his convictions on counts one and two, charging violations of N.J.S.A. 2C:11-5.1, defendant argues that the State failed to present sufficient evidence to establish that he drove the vehicle that struck Benjumea-Bastidas and Fernandez-Minaya, and that he then left the scene. We disagree.

N.J.S.A. 2C:11-5.1 states, in relevant part:

> A motor vehicle operator who knows he [or she] is involved in an accident and knowingly leaves the scene of that accident under circumstances that violate the provisions of [N.J.S.A. 39:4-129] shall be guilty of a crime of the second degree if the accident results in the death of another person.

N.J.S.A. 39:4-129(a) states that:

> The driver of any vehicle, knowingly involved in an accident resulting in . . . death to any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene until he has fulfilled the requirements of subsection (c) of this section.

Subsection (c) of N.J.S.A. 39:4-129 states in pertinent part:

11                                          A-0516-14T1

> The driver of any vehicle knowingly involved in an accident resulting in injury or death to any person or damage to any vehicle or property shall give his name and address and exhibit his operator's license and registration certificate of his vehicle to the person injured or whose vehicle or property was damaged and to any police officer or witness of the accident, and to the driver or occupants of the vehicle collided with and render to a person injured in the accident reasonable assistance, including the carrying of that person to a hospital or a physician for medical or surgical treatment, if it is apparent that the treatment is necessary or is requested by the injured person.

Here, the State presented sufficient evidence to allow a jury to find beyond a reasonable doubt that defendant was guilty of the offenses charged under N.J.S.A. 2C:11-5.1. As we stated previously, the State presented testimony regarding the extensive physical evidence recovered from the scene, which allowed the jury to find that defendant's 2003 Cadillac Escalade was the vehicle that struck the two victims.

The State presented evidence that the DNA in the hair obtained from Benjumea-Bastidas matched the DNA in the hair recovered from the undercarriage of defendant's car. The evidence also showed that this hair was from a human being, not from a deer.

Furthermore, the State presented surveillance videos from the night of the accident. One video showed defendant at the Holiday Inn in Totowa and his vehicle was not damaged. The other video

12

showed defendant leaving the Six Brothers Diner at approximately 3:49 a.m. The diner is a three-minute drive to the crash site. As noted, the officer was dispatched to the scene at 3:57 a.m.

The State also presented testimony from A.F. and the police officers who said that they did not see any car, including a damaged car, stop after the accident or return to the scene. Finally, there was no evidence supporting defendant's claim that he hit a deer on Route 19.

Viewing the State's evidence in its entirety, and giving the State the benefit of all favorable inferences that reasonably could be drawn from the evidence, we conclude that the State presented sufficient evidence to support the jury's verdict finding defendant guilty beyond a reasonable doubt of the offenses charged under N.J.S.A. 2C:11-5.1. We reject defendant's contention that the verdict should be deemed the result of mistake, passion, prejudice, or partiality.

### III.

Next, defendant argues that the State did not present sufficient evidence to allow the jury to find beyond a reasonable doubt that he was guilty of the charges under N.J.S.A. 2C:12-1.2(a). The statute provides that:

> A person is guilty of endangering an injured victim if he causes bodily injury to any

person or solicits, aids, encourages, or attempts or agrees to aid another, who causes bodily injury to any person, and leaves the scene of the injury knowing or reasonably believing that the injured person is physically helpless, mentally incapacitated or otherwise unable to care for himself.

[Ibid.]

As applied here, N.J.S.A. 2C:12-1.2(a) required the State to establish that 1) defendant knowingly caused bodily injury to a person; 2) the injured person was physically helpless, mentally incapacitated, or otherwise unable to care for himself or herself; and 3) defendant left the scene of the injury knowing or reasonably believing that the injured person was in that condition. State v. Munafo, 222 N.J. 480, 488-89 (2015). "Physically helpless" is defined as "the condition in which a person is unconscious, unable to flee, or physically unable to summon assistance." N.J.S.A. 2C:12-1.2(b).

Defendant argues that the State failed to establish that after the accident, Benjumea-Bastidas and Fernandez-Minaya were "physically helpless." In support of his argument, defendant relies upon State v. Moon, 396 N.J. Super. 109 (App. Div. 2007), certif. denied, 193 N.J. 586 (2008).

In Moon, the defendant put a gun to the victim's head, pulled the trigger, and kicked the victim's body to check if he was alive.

Id. at 112. We noted that the State did not present any evidence showing that the victim "exhibited any sign of life after he was shot or that defendant or anyone else present knew or reasonably believed that he was alive and incapacitated, helpless or unable [to summon assistance] after he collapsed." Id. at 115.

We therefore held that N.J.S.A. 2C:12-1.2(a) did not apply in that case. Id. at 117. We determined that the State's evidence was inadequate to permit the jury to find that the victim was physically helpless or "that the defendant left [the victim] on the street knowing or reasonably believing that he was anything other than dead." Ibid.

Defendant's reliance upon Moon is misplaced. Here, the State presented evidence that allowed the jury to find that after the accident, the victims survived briefly and were physically helpless. The State also presented evidence that allowed the jury to find that defendant left the accident while the victims were in that condition. The evidence also allowed the jury to find that defendant did not stop to check on the victims, but instead left the scene.

Viewing the evidence in its entirety, and giving the State the benefit of all favorable inferences that reasonably could be drawn from the evidence, we conclude the State presented sufficient

A-0516-14T1

evidence to support the jury's verdict on the charges under N.J.S.A. 2C:12-1.2(a).

## IV.

Defendant further argues that the State did not present sufficient evidence to support the jury's verdict finding him guilty of hindering apprehension, contrary to N.J.S.A. 2C:29-3(b)(1), and of tampering with evidence, contrary to N.J.S.A. 2C:28-6(1). N.J.S.A. 2C:29-3 provides in pertinent part that:

> (b) A person commits an offense if, with purpose to hinder his own detention, apprehension, investigation, prosecution, conviction or punishment for an offense or violation of Title 39 of the Revised Statutes or a violation of chapter 33A of Title 17 of the Revised Statutes, he:
>
> (1) Suppresses, by way of concealment or destruction, any evidence of the crime or tampers with a document or other source of information, regardless of its admissibility in evidence, which might aid in his discovery or apprehension or in the lodging of a charge against him[.]

In addition, N.J.S.A. 2C:28-6(1) states that a person commits the crime of tampering with evidence:

> if, believing that an official proceeding or investigation is pending or about to be instituted, he: (1) alters, destroys, conceals or removes any article, object, record, document or other thing of physical substance with purpose to impair its verity or availability in such proceeding or investigation[.]

16                                                    A-0516-14T1

Defendant contends that he did not impede or hinder his apprehension or tamper with evidence because he took his vehicle to a "reputable and licensed auto repair facility" after filing a report with his insurance company, and that he was unaware of the accident. He contends the vehicle was never hidden or destroyed. These arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

We note, however, that the evidence established that defendant sought to have his damaged car repaired shortly after the accident, claiming that the car had been damaged by a collision with a deer. The jury could reasonably find that, by doing so, defendant was acting to hinder his own apprehension and impair the availability of evidence relevant to the deaths of Benjumea-Bastidas and Fernandez-Minaya.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION