**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3958-17T3

KIM O'CONNELL,

      Plaintiff,

and

RONALD DESANTIS,

      Plaintiff-Appellant,

v.

PRAKASH KHIANI,

      Defendant-Respondent.

_____

> Submitted December 11, 2018 – Decided December 21, 2018
>
> Before Judges Yannotti and Natali.
>
> On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3710-15.
>
> Gregg A. Williams, attorney for appellant.
>
> Martin, Kane & Kuper, attorneys for respondent (Eric Kuper, of counsel and on the brief; Dana McDade, on the brief).

PER CURIAM

After a four-day trial in this automobile negligence case, the jury determined plaintiff Ronald DeSantis was entitled to $10,000 in damages for his pain, suffering, impairment, disability, and loss of enjoyment of life. Dissatisfied with the verdict, plaintiff moved for a new trial pursuant to Rule 4:49-1(a), or, in the alternative, an additur. The court denied plaintiff's motion in a March 2, 2018 order. We affirm.

I.

On February 17, 2015, plaintiff was a passenger in a car operated by his girlfriend, Kim O'Connell.[1] While stopped at an intersection, O'Connell's car was struck from behind by defendant's vehicle. Plaintiff testified that he believed defendant's car was traveling at fifty miles-per-hour when it hit O'Connell's vehicle based on the heavy impact and "by the way [O'Connell's] car got jolted." Plaintiff stated that he and O'Connell both jerked forward.

Plaintiff did not seek medical treatment at the scene. Instead, three days after the accident, plaintiff went to the emergency room complaining of a stiff neck and pain in his back and hand. He later sought chiropractic treatment from

_____

[1] O'Connell was also named as a plaintiff but settled with defendant prior to trial.

Dr. John Marullo, DC, and physical therapy for his injuries, which he stated provided only temporary relief.

At trial, Dr. Baher Yanni, M.D., a pain management specialist and anesthesiologist, testified that he observed multiple herniated and bulging disks in the MRI film of plaintiff's back and neck. He opined that these injuries were permanent, and a result of the trauma sustained by plaintiff in the motor vehicle accident.

To decrease the inflammation that was causing him pain, Dr. Yanni gave plaintiff two epidural injections in his back and one in his neck. Dr. Yanni testified that because the two lumbar injections provided plaintiff with only temporary relief, he recommended back surgery. On August 4, 2016, Dr. Yanni performed "minimally invasive" lumbar discectomy surgery, which resulted in the removal of a part of plaintiff's vertebral disc. Plaintiff testified that after his back surgery, the numbness that he was experiencing in his legs wore off and some of his back pain was gone.

Because the cervical epidural injection did not relieve plaintiff's neck discomfort, Dr. Yanni testified that he performed a medial branch block procedure, which involved injecting a local anesthetic into plaintiff's facet joints

near the affected medial nerves. Dr. Yanni stated that this procedure temporarily relieved plaintiff's cervical pain.

With respect to plaintiff's right wrist pain, Dr. Yanni testified that after he performed a series of diagnostic tests, and reviewed electromyogram findings, he concluded plaintiff suffered from carpal tunnel syndrome, which can be caused by trauma. Due to his continued complaints of wrist pain, Dr. Yanni referred plaintiff to a hand surgeon.

At trial, plaintiff testified that as a result of the accident, he suffered back, neck, and hand pain, stiffness in his neck, and numbness in his fingers and toes. He explained that he could no longer enjoy traveling, skiing, or attending car shows with his son, as he did prior to the accident. Plaintiff's son confirmed that since the accident, he and his father have been unable to participate in the physical activities they used to engage in together.

Contrary to plaintiff's testimony, defendant testified that he was traveling at less than fifteen m.p.h. at the time of the accident and the impact was light. In addition, defendant also called a medical expert, Dr. Robert J. Bercik, M.D., who testified regarding his findings after examining plaintiff on February 3, 2016 and April 19, 2017. Dr. Bercik conceded that, although "his function [was]

normal," plaintiff had sustained a "permanent physical impairment" to his back resulting from the accident, but not to his neck or wrist.

Dr. Bercik concluded that plaintiff sustained a cervical sprain in his neck that was not permanent. He testified that he felt plaintiff's neck for tenderness or spasm and performed a range of motion exam and compression test to determine if the nerves in plaintiff's neck were irritated. Dr. Bercik indicated that the results of these exams were normal. He also reviewed plaintiff's cervical MRI films and observed disk herniations and bulging that he testified were likely caused by degenerative changes, rather than trauma from the accident.

With respect to plaintiff's wrist, Dr. Bercik testified that after performing a series of diagnostic tests, he initially concluded that plaintiff had carpal tunnel syndrome related to the motor vehicle accident. However, after plaintiff's second examination and additional testing, Dr. Bercik stated that plaintiff's carpal tunnel syndrome had resolved and was not permanent.

Prior to trial, the court granted plaintiff partial summary judgment and determined defendant was "100% negligent and his negligence was the proximate cause of the accident." At the conclusion of all trial evidence, defendant stipulated that plaintiff sustained a permanent injury to his back that would not heal "to function normally with further medical treatment" thereby

5

overcoming the limitation-on-lawsuit threshold provisions of the Automobile Insurance Cost Reduction Act, N.J.S.A. 30:6A-1.1 to -35. Defendant disputed that plaintiff's cervical and wrist injuries were permanent and that the cervical herniations and bulging were causally related to the accident.

As a result of the court's summary judgment decision and the parties' stipulation, the verdict sheet was limited to a single question: "[w]hat amount of money would reasonably and fairly compensate the plaintiff, Ronald DeSantis, for his pain, suffering, impairment, disability, and loss of enjoyment of life as a proximate result of the accident on February 17th, 2015?" After the jury returned its $10,000 verdict,[2] plaintiff filed a timely motion for a new trial or, in the alternative, for additur. After hearing oral arguments, the court denied plaintiff's motion.

The court explained in its oral opinion that "a reasonable jury could have accepted the [expert] opinion offered by the defense," "reject[ed] [the] claims by the plaintiff," and found that "$10,000 was a reasonable compensation for [plaintiff's] injuries . . . which they attributed to this accident." The court determined that the verdict did not shock the "judicial conscience such that it

---

[2] The parties stipulated that the plaintiff's medical expenses totaled $69,900. Of that amount, $15,000 was paid by plaintiff's personal injury protection (PIP) insurer. Defendant agreed to reimburse plaintiff for the remaining $54,900.

. . . clearly and convincingly represent[ed] a miscarriage of justice requiring a new trial." Finally, the court concluded that plaintiff was not entitled to an additur, "given th[e] [c]ourt's determination that a jury could reasonably find as it did."

On appeal, plaintiff argues that the $10,000 award was inadequate and against the weight of the evidence. He maintains that the jury ignored the court's instruction regarding plaintiff's entitlement to recover "fair and reasonable compensation for the full extent of the harm and losses caused." Plaintiff further asserts that the jury's verdict is insufficient when considering his life expectancy, and is disproportionate to the monetary amount of his medical expenses. Having reviewed the trial record, we find no merit in plaintiff's arguments and affirm.

## II.

Pursuant to Rule 4:49-1(a), a court may grant a party's motion for a new trial if "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." The trial judge must not "substitute his judgment for that of the jury merely because he would have reached the opposite conclusion . . . ." Dolson v. Anastasia, 55 N.J. 2, 6 (1969). Instead, the court

must "determine whether reasonable minds might accept the evidence as adequate to support the jury verdict." Ibid. (quoting Kulbacki v. Sobchinsky, 38 N.J. 435, 445 (1962)).

Further, a jury verdict is generally "impregnable." Doe v. Arts, 360 N.J. Super. 492, 502-03 (App. Div. 2003). A trial court should refrain from interfering with a jury's assessment of damages "unless it is so disproportionate to the injury and resulting disability shown as to shock the conscience and to convince [the court] that to sustain the award would be manifestly unjust." Baxter v. Fairmont Food Co., 74 N.J. 588, 596 (1977). A trial court assessing whether a jury verdict is excessive or inadequate "must consider the evidence in the light most favorable to the prevailing party in the verdict." Caldwell v. Haynes, 136 N.J. 422, 432 (1994).

A trial court's decision on a motion for a new trial will "not be reversed [on appeal] unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1. While an appellate court must make this determination on its own, Carrino v. Novotny, 78 N.J. 355, 360 n.2 (1979), it defers to the trial court regarding "intangible aspects of a case" not conveyed in the record, such as "feel of the case" and witness credibility and demeanor. Ibid.; see also Dolson, 55 N.J. at 6-7.

8                                                                    A-3958-17T3

On a motion for a new trial based on an inadequate damage award, additur allows the court to "require the defendant to consent to an increase to a stipulated amount of the award as a condition for denial of the motion for a new trial." Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 491 n.2 (2001). However, a court may only order additur where "a new trial, at least on the damages issue, would be warranted." Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 4:49-1(a) (2018).

III.

After our independent review of the record, we conclude that the jury's verdict and the court's denial of plaintiff's motion for post-judgment relief was not a miscarriage of justice and was supported by the trial evidence. Dr. Yanni testified that plaintiff's surgery was "minimally invasive," and Dr. Bercik concluded that plaintiff's "function [was] normal" despite the permanent nature of his back injury. Dr. Bercik's opinion was supported by plaintiff's testimony that he returned to work as an air conditioning and heat technician two days after the accident. Further, the jury could have credited Dr. Bercik's opinion that plaintiff sustained only a non-permanent sprain to his neck and his cervical herniations and bulging were caused by degenerative changes unrelated to the trauma of the accident. Similarly, the jury was free to accept Dr. Bercik's

9

testimony that plaintiff's carpal tunnel syndrome was also temporary and had resolved at the time of his second examination. Finally, the trial record supports the court's determination that there was no basis for an additur.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3958-17T3