**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2875-16T1

EMERALD BAY DEVELOPERS,
LLC and ROPER REALTY, LLC,

      Plaintiffs-Appellants,

v.

LENYK AUTOMOTIVE, INC., d/b/a
LENYK'S AUTOMOTIVE, INC.,
SLAWKO LENYK, a/k/a SLEWKO
LENYK, PENNSYLVANIA NATIONAL
MUTUAL CASUALTY INSURANCE
COMPANY, a/k/a PENN NATIONAL
INSURANCE, a/k/a PENN NATIONAL
SECURITY INSURANCE COMPANY,
a/k/a PEN NATIONAL HOLDING
CORPORATION,

      Defendants-Respondents,

and

LENYK AUTOMOTIVE, INC., d/b/a
LENYK'S AUTOMOTIVE, INC.,
SLAWKO LENYK, a/k/a SLEWKO
LENYK,

      Third-Party Plaintiffs,

v.

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA, a/k/a
TRAVELERS,

    Third-Party Defendant.
_____

Argued September 12, 2018 – Decided September 25, 2018

Before Judges Sabatino, Haas and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3340-13.

Kenneth S. Thyne argued the cause for appellants (Roper & Thyne, LLC, attorneys; Kenneth S. Thyne, on the briefs).

Eric J. Weiss argued the cause for respondents Lenyk Automotive, Inc. and Slawko Lenyk.

Emery J. Mishky argued the cause for respondent Pennsylvania National Mutual Casualty Insurance Company (Margolis Edelstein, attorneys; Emery J. Minsky, of counsel and on the brief; Victoria J. Adornetto, on the brief).

PER CURIAM

    This case involves limestone slabs stored outdoors on plaintiffs' property that became discolored after Hurricane Irene in August 2011. Plaintiffs Emerald Bay Developers, LLC ("Emerald Bay") and Roper Realty, LLC ("Roper Realty") appeal the trial court's successive rulings dismissing their claims arising out of

2

the limestone damage. Specifically, plaintiffs appeal: (1) the trial court's December 5, 2014 order granting summary judgment to defendant Slawko Lenyk, individually; and (2) the court's February 2, 2017 involuntary dismissal of plaintiffs' claims against defendants Lenyk Automotive, Inc. ("LA") and Pennsylvania National Mutual Casualty Insurance Company ("Penn National") pursuant to Rule 4:37-2(b), after plaintiffs had presented their case in chief at trial and an insurance broker also testified.

For the reasons that follow, we affirm. We agree with the trial court that plaintiffs failed to prove a factual and legal basis to establish liability of LA or its owner Mr. Lenyk for the limestone damage, particularly in the absence of supporting expert testimony addressing the sources and causes of that damage and its monetary value. We also concur with the trial court that plaintiffs failed to establish coverage for the limestone damage under the terms of the insurance policies issued to Roper Realty by Penn National.

## I.

Both plaintiffs are affiliated with Craig Roper, a businessman who is married to Angela Roper, Esq., an attorney in the law firm that represents

plaintiffs. Craig Roper[1] has an ownership interest in both Roper Realty and Emerald Bay.

Roper Realty owns a commercial property in Wayne, on which Emerald Bay operated a home construction and woodworking business. As of the time of the hurricane in August 2011, Emerald Bay stored materials and equipment on the property, including thirty to forty pallets of imported limestone it planned to use on a customer's site. The limestone was kept outside.

LA owned and operated a business adjacent to Emerald Bay. LA had two above-ground storage tanks on its property. One tank contained waste motor oil and the other contained fuel oil used to heat LA's building.

As a result of the hurricane, the area was heavily flooded. The limestone became discolored and allegedly unusable. Plaintiffs attribute the discoloration to oil they presume had leaked from LA's tanks and infiltrated the limestone.

After Hurricane Irene passed and the rain had stopped falling, Roper first observed his companies' property from Route 23. The highway is about thirty to forty feet above the property. Roper observed oil slicks on the property and

---

[1] For ease of discussion, we refer hereafter to Craig Roper as "Roper," unless the context indicates his wife Angela Roper. In doing so, we intend no disrespect.

accumulated water about three-and-one-half feet high. Roper could not see the condition of LA's oil tanks from the highway.

Roper thereafter took photographs of the oil slicks. His wife Angela called the Office of Emergency Management, FEMA, and various other governmental agencies, notifying them about the apparent oil contamination on plaintiffs' property. Angela acknowledged in her trial testimony that she did not personally observe any leaks from LA's tanks.

The next time that Roper saw the property was about one week later, after the waters had receded. He observed oil stains through the parking lots and driveways at both his companies' property and LA's property. Roper noticed the limestone slabs were stained in "black oil slick." He also observed both tanks were tipped over on their sides.

Roper claimed that he could smell diesel oil from LA's tanks. He testified that he recognized the smell because he had helped build gas stations when he was younger. Roper perceived that the heating oil smelled similar to diesel fuel. He observed a residual oil slick near the tanks. He claimed he could see where the water was contaminated, where it had receded, and oil stains that had formed on his adjoining property.

Roper noted both tanks on LA's property had vents. One of the tanks had a pipe connecting it to LA's building, and Roper observed that pipe was ruptured. According to Roper, the other tank did not have a cap on it, but just a rag. However, Roper did not observe any oil leaking out of the tanks.

Roper acknowledged there was a gas station "a couple of lots" from LA, but he believed it did not sell heating oil or diesel.

According to Roper, during floods in the area, the water would generally rise from LA's side of plaintiffs' property and recede from that side. Roper testified he had not been worried about flood waters before Hurricane Irene because previous floods had not caused a problem on his property.[2]

The limestone was located about one hundred feet from the tanks. It was intended to be used by Roper as an exterior finish and was pure white. After the storm, the limestone appeared black in places. Roper believed the limestone had absorbed the oil after the hurricane because he tried to clean it unsuccessfully with bleach and by power washing.

---

[2] On cross-examination by counsel for LA, Roper stated that during the sixteen years that his companies owned and used the property, at least six major storms had hit the area. Roper was unaware of any oil tanks overturning on the Lenyk property during his time as neighbor.

A-2875-16T1

Roper used the manifest on each pallet to determine which pallets were damaged and could not be used. He forwarded this information to his stone broker to obtain an estimate of the cost of the replacement. The trial court excluded plaintiffs' attempt to present hearsay proof of the estimate.[3]

Roper admitted on cross-examination that his photograph of one of the overturned tanks showed the cap was still on the tank. He acknowledged that he could not discern the condition of the tanks from the Route 23 overpass and did not see the oil slicks emanate from the tanks. Roper further admitted that he had access to a forklift that could have moved the limestone pallets to a more elevated area before the storm, but did not make use of it.

Roper submitted an incident report to the Passaic County Department of Health on September 23, 2011, which was about a month after he had first seen the oil slicks. The incident report did not contain any mention of Roper seeing oil come from LA's tanks.

According to Angela Roper's testimony, a governmental official at some point did visit the site. Apparently, no governmental agency ever took remedial action concerning the alleged oil discharge.

---

[3] Plaintiffs' briefs do not challenge any of the trial court's evidentiary rulings, although they at times improperly rely on or refer to proof the court excluded.

Notably, plaintiffs did not retain an expert to evaluate the facts and render an opinion addressing whether oil from LA's tanks had leaked and caused the damage to their limestone. Nor did plaintiffs obtain an expert to provide a report quantifying the monetary value of the limestone damage. According to Angela Roper's testimony, she did contact several companies and learned that the cost to test the contamination was "expensive." She told Penn National and Mr. Lenyk that the matter of testing was "their problem" and provided those testing cost estimates to them.

Roper did no testing of his own. He testified that he "wanted to settle the matter between [the pertinent] insurance companies."

Angela Roper testified that Roper Realty and Emerald Bay had purchased insurance coverage before the storm through the MacCormack Insurance Agency, formerly known as Castellini Insurance.[4] She was aware the property owned by Roper Realty was located within a flood zone. According to Angela, plaintiffs chose not to obtain flood insurance because such coverage was limited. Instead, as Angela described it, plaintiffs made arrangements to "move things up" on the premises whenever they knew there would be flooding, believing that their building itself was secure. Angela asserted the insurance broker knew what

---

[4] Plaintiffs did not sue MacCormack, their insurance broker.

activities Emerald Bay was performing on Roper Realty's property, knew that Emerald Bay stored materials on site, and knew that no one else used their building.

Plaintiffs sought payment from their insurer, Penn National, for the damaged limestone. After Penn National declined to pay their claim, plaintiffs filed a multi-count complaint in the Law Division against LA, LA's owner Slawko Lenyk, and Penn National. Count one asserted common-law negligence against LA and Mr. Lenyk. Count two alleged a claim against LA and Mr. Lenyk for monetary and injunctive relief under the Spill Act, N.J.S.A. 58:10-23.11 to -23.11z. Count three alleged common-law trespass against LA and Mr. Lenyk. Count four alleged breach of contract against Penn National. Count five alleged Penn National violated the covenant of good faith and fair dealing. Count six accused Penn National of violating the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -20. Count seven sought a declaratory judgment for coverage and equitable relief against Penn National. Lastly, count eight alleged wrongful concealment or destruction of evidence by LA and Mr. Lenyk.

After responsive pleadings were filed, plaintiffs amended their complaint. LA and Lenyk, meanwhile, filed a third-party complaint against Travelers Casualty Insurance Company of America ("Travelers"). The trial court

9

dismissed plaintiffs' CFA claim and also apparently dismissed the declaratory judgment count without prejudice.

The pretrial judge in the Law Division[5] granted summary judgment to Travelers and Mr. Lenyk, individually, but denied the summary judgment motions of LA and Penn National. The pretrial judge concluded in his oral opinion dated December 5, 2014 that there were no genuine issues of material fact to support plaintiffs' contention that Mr. Lenyk had personal liability to plaintiffs for any alleged conduct or for any corporate liability that may exist for his company, LA. In addition, the pretrial judge discerned no basis for coverage under the Travelers policy.

The matter proceeded to a non-jury trial in January 2017. The sole witnesses who testified at trial were the Ropers and Michael Castellini, an agent of the insurance broker, who Penn National called as a defense witness. After hearing this testimony and considering various exhibits admitted into evidence, the trial judge granted the motions of LA and Penn National for involuntary dismissal pursuant to Rule 4:37-2(b). The judge concluded that, even viewing the proofs in a light most favorable to plaintiffs, they had not proven causation and damages against LA. Moreover, the judge concluded the terms of the Penn

---

[5] A different judge later presided over the bench trial.

National policy plaintiffs chose to purchase did not cover the flood-related losses they claimed in this case.

Plaintiffs now appeal the trial court's pretrial dismissal of Mr. Lenyk, as well as the involuntary dismissal at trial of their claims against LA and Penn National.[6]

## II.

We first address plaintiffs' arguments respecting the dismissal of their claims against LA and Mr. Lenyk. Because plaintiffs' effort to impose liability upon Mr. Lenyk individually largely depends upon the viability of their claims against LA, we focus upon their trial proofs and the court's ensuing involuntary dismissal of LA.

In reviewing the trial evidence and the court's involuntary dismissal order, we are guided by the well-established standards of Rule 4:37-2(b). The Rule provides that, at the close of the plaintiff's case in chief, a defendant "may move for a dismissal of the action or of any claim on the ground that upon the facts

---

[6] Although plaintiffs' notice of appeal includes the summary judgment order in favor of Travelers on the list of appealed orders, plaintiffs do not present any argument in their briefs contesting Travelers' dismissal. Nor has any other party on appeal filed a brief with respect to Travelers. Hence, we deem any such appeal as to Travelers abandoned. Zavodnick v. Leven, 340 N.J. Super. 94, 103 (App. Div. 2001). At oral argument on appeal, plaintiffs' counsel acknowledged they do not challenge the dismissal of Travelers from the litigation.

A-2875-16T1

and upon the law the plaintiff has shown no right to relief . . . [but] such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." In this context, the court must accept as true "all the evidence which supports the position of the party defending against the motion and according him the benefit" of all legitimate and reasonable inferences therefrom. Dolson v. Anastasia, 55 N.J. 2, 5 (1969) (citations omitted). If "reasonable minds could differ" regarding the outcome, "the motion must be denied." Ibid. On appeal, we apply the same standards. Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016).[7]

As we have already noted, plaintiffs sued LA and Mr. Lenyk for damages under both the Spill Act and various common-law theories. Count two of plaintiffs' complaint describes their Spill Act allegation as a claim for "contribution" under the statute. However, that label appears inappropriate, as plaintiffs have not been sued or charged by any environmental agency as a discharger of pollutants or a responsible party. A claim for contribution under

_____

[7] We note the trial judge's role in this non-jury trial as the finder of fact arguably enhances the deference we should afford the judge's determinations, since the judge heard all of plaintiff's evidence. See Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974) (noting that a trial judge's factual findings are entitled to deference on appeal so long as they are supported by substantial credible evidence). There was no jury that would have provided a separate assessment of the evidence.

the Spill Act inherently entails an effort by a defendant or other party charged with liability under the Act to compel other responsible parties to "contribute," in full or part, to that party's potential liability under the Act. The term does not appear to fit the present situation, which casts doubt upon plaintiffs' ability under the law to bring a private cause of action for damages under the Spill Act.[8]

Assuming, for the sake of argument, plaintiffs do have standing as non-dischargers to bring a private action for damages under the Spill Act, their statutory claims must be founded upon competent and sufficient proof that defendants proximately caused those claimed damages. To establish such causation, expert opinion is often necessary to show the scientific nexus between a defendant's conduct and the alleged contamination of plaintiff's property. The Supreme Court underscored the need for such expert testimony in N.J. Dep't of

---

[8] As this court observed earlier this year in N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272 (App. Div.), certif. denied, 233 N.J. 378 (2018), the Spill Act provides for two private causes of action: "'one to recover clean-up costs from [other] discharges (contribution claim), [N.J.S.A. 58:10-23.11f(a)(2)] and one to recover damages from the NJDEP, or Spill Compensation Fund.'" Id. at 292 (quoting Bonnieview Homeowners Ass'n v. Woodmont Builders, LLC, 655 F. Supp. 2d 473, 503 (D.N.J. 2009)). Neither sort of claim appears to be advanced here. But see Bahrle v. Exxon Corp., 279 N.J. Super. 5, 36-37 (App. Div. 1995) (allowing innocent homeowners damaged by a neighboring landowner's discharge to recover their clean-up costs under the Act), aff'd, 145 N.J. 144 (1996). We need not resolve in this unpublished opinion whether Bahrle remains good law in light of Exxon Mobil.

A-2875-16T1

Envtl. Prot. v. Dimant, 212 N.J. 153 (2012). In Dimant, the Court ruled that the DEP had failed to show with persuasive expert proof how a pipe from the defendant's property observed dripping a contaminant on a single day could have reasonably made its way into the groundwater during the defendant's business operations. Id. at 183. Interpreting the terms of the Spill Act, the Court elaborated in Dimant upon the statute's requirement of proof of causation. Specifically, a defendant "must be shown to have committed a discharge that was connected to the specifically charged environmental damage . . . in some real, not hypothetical, way." Id. at 182.

"A reasonable nexus or connection must be demonstrated by the preponderance of the evidence." Ibid. "[I]t is not enough for a plaintiff to simply prove that a defendant produced a hazardous substance and that the substance was found at the contaminated site and 'ask the trier of fact to supply the link.'" Ibid. (citing N.J. Tpk. Auth. v. PPG Indus., 197 F.3d 96,105 n.9 (3d Cir.1999) (internal citation omitted). In an action to obtain damages under the Act, "there must be shown a reasonable link between the discharge, the probative discharger, and the contamination at the specifically damaged site." Ibid. Applying this causation standard, the Court concluded the DEP's expert and factual proofs fell short, by "fail[ing] to connect the discharge from the pipe,

14

during [the defendant's] operation, to the soil or groundwater damage at the heart of [the] contamination case." Ibid.

Sufficient proof of causation is likewise an essential element of plaintiffs' common-law claims. Proximate causation of harm is a classic ingredient of a cause of action for negligence. See, e.g., Townsend v. Pierre, 221 N.J. 36, 51 (2015). Similarly, a viable claim for damages under a theory of trespass requires a plaintiff to prove the defendant's improper entry upon its land caused the plaintiff harm. Ross v. Lowitz, 222 N.J. 494, 510 (2015). Plaintiffs have not presented contrary authority relieving them of this obligation to prove causation as to their common-law claims.

We agree with the trial court that plaintiffs' failure to marshal expert proof of causation to support their liability claims in this case is a fatal defect, and that their claims cannot be solely founded upon Roper's lay observations of certain conditions he observed on site after the hurricane. The causal nexus between the oil stored in LA's tanks and the discoloration of plaintiffs' limestone is a subject beyond common knowledge. See, e.g., Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226, 239 (App. Div. 2012) (concluding expert testimony was necessary to address a subject matter beyond "the general public's familiarity").

A-2875-16T1

The claimed linkages between the storage of oil in LA's tanks, the alleged leakage from those tanks after they tipped over in the storm, the actual composition and sources of the oil slicks observed and the odors smelled by Roper after the storm, and the chemical processes that produced the observed discoloration of the limestone are all matters requiring persuasive expert testimony. Plaintiffs unwisely attempted to litigate this case without such critical expert proof.

The trial court correctly determined, even upon giving all reasonable inferences to plaintiffs from their trial proofs that the lay testimony of Roper, along with the photographs and other exhibits, were plainly inadequate to establish that oil from LA's tanks actually caused the discoloration of the limestone. Neither Roper nor his wife observed oil flowing out of defendant's tanks. Nor was a gash or rupture of the tanks observed. The tanks were never inspected or tested. A photograph in evidence actually shows a secure cap on LA's heating oil tank. As the trial judge recognized, it is entirely conceivable that the oil slicks Roper observed on the floodwaters could have come from properties other than LA, including a gas station two doors away and an auto repair shop across the street. Even accepting Roper's personal experience and asserted ability to distinguish the odor of diesel fuel oil, his suppositions are

16

inadequate to prove where that oil came from. Liability claims cannot be founded upon mere speculation. Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009); Merchants Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005).

Apart from these patent causation defects in their liability proofs, plaintiffs also did not provide sufficient evidence at trial of the monetary value of their claimed losses. Plaintiffs did not present competent non-hearsay evidence of the market value of the tainted limestone, or the degree to which some of the slabs could still be salvaged or marketable. No expert witness inspected or tested the slabs, or provided testimony about their market value before and after the storm. Damages must be proven with reasonable certainty proof, which is lacking here. V.A.L. Floors, Inc. v. Westminster Cmtys., Inc., 355 N.J. Super. 416, 426 (App. Div. 2002).

Given our foregoing analysis, we do not need to say much about plaintiffs' assertion that Mr. Lenyk is individually liable for the alleged damage to their limestone. The pretrial judge who granted summary judgment to Mr. Lenyk appropriately applied the well-established standards governing such motions. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). The same deficiencies of causation proof that warranted dismissal of plaintiffs' claims

17

against LA also pertain to the claims against Mr. Lenyk in his capacity as the owner of LA and the neighboring lot. Even if the "corporate veil" of LA's status as a corporate entity were somehow lifted, the inescapable problem for plaintiffs is that they failed to sustain their burden of proving causation at trial.

The same flaw exists with regard to plaintiffs' unsubstantiated claims for injunctive relief, even under the somewhat less rigorous standards governing such injunctions. See Dimant, 212 N.J. at 182. There is no justification for enjoining conduct that has not shown to be harmful. Moreover, plaintiffs have not established that the government's response to their report of contamination and inspection of the site was inadequate. See Exxon Mobil Corp., 453 N.J. Super. at 293.

For these many reasons, the pretrial judge appropriately granted summary judgment in favor of Mr. Lenyk, and the trial judge thereafter appropriately granted involuntary dismissal to LA after fairly considering the proofs adduced before her. We therefore affirm both dismissal orders.[9]

---

[9] Despite the shortfalls in plaintiff's proofs, we reject the Lenyk defendants' request that we declare plaintiffs' appeal frivolous under Rule 1:4-8 and impose sanctions.

Plaintiffs also appeal the trial court's determination that the insurance policy they procured from Penn National did not cover the limestone damage in this case. We consider their contentions of error on this coverage issue de novo, since the interpretation of the terms of an insurance policy inherently is a question of law. Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy, 210 N.J. 597, 605 (2012).

Having conducted that de novo review, we affirm the trial court's rejection of plaintiffs' coverage claims, substantially for the sound reasons set forth in the trial judge's January 25, 2017 oral opinion. We need not reiterate here the details of that analysis, other than to underscore a few salient points.

Despite the flood-prone nature of the neighborhood, plaintiffs admittedly chose not to purchase flood insurance coverage. The policy they obtained from Penn National was what is fairly described as a "lessor's risk only" policy, with Roper Realty being the lessor and Emerald Bay being the lessee. The limestone owned by Emerald Bay was therefore not encompassed by Roper Realty's first-party coverage. Plaintiffs declined to purchase an endorsement to insure the contents of the premises, other than the building on site. Further, Roper's listing as an "additional insured" under the Commercial General Liability portion of

the policy governing third-party liability claims does not support plaintiffs' attempt to obtain first-party benefits for the limestone.

In sum, the policy terms are not ambiguous, and were reasonably construed by the trial court to foreclose the coverage now desired, in retrospect, by plaintiffs who elected not to purchase a broader policy.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2875-16T1