**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5452-16T3

FRANK TIMEK,

       Plaintiff-Respondent/
       Cross-Appellant,

v.

CHIEF ERNEST JUBILEE,

       Defendant,

and

THE CITY OF ATLANTIC
CITY,

       Defendant-Appellant/
       Cross-Respondent.

_____

Argued March 27, 2019 – Decided July 12, 2019

Before Judges Fuentes, Vernoia and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0014-13.

David F. Corrigan argued the cause for appellant/cross-respondent (David F. Corrigan LLC, attorneys; David

F. Corrigan, of counsel and on the briefs; Rahool N. Patel, on the brief).

Louis Michael Barbone argued the cause for respondent/cross-appellant (Jacobs & Barbone, PA, attorneys; Louis Michael Barbone, on the brief).

PER CURIAM

Plaintiff Frank Timek, a police officer employed by defendant City of Atlantic City, obtained a jury verdict awarding him damages for economic loss and emotional distress in a suit for retaliation under the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. Defendant appeals from a June 29, 2017 final order contending the trial court erred by denying its motion for judgment notwithstanding the verdict; alternatively, it argues the introduction of hearsay evidence during the trial warrants a new trial. Timek cross-appeals arguing the trial court erred by refusing to present his punitive damages claim to the jury. We are unpersuaded by defendant's arguments and affirm the judgment against it; we agree, however, plaintiff's punitive damages claim should have been presented to a jury and remand.

A plaintiff seeking to establish a retaliatory CEPA violation must prove: (1) "he or she reasonably believed illegal conduct was occurring"; (2) "he or she disclosed or threatened to disclose the activity to a supervisor or public body";

(3) "retaliatory employment action was taken against him or her"; and (4) "a causal connection [exists] between the whistle-blowing and the adverse employment action." Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 358-59 (App. Div. 2002) (quoting Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999)), appeal dismissed, 177 N.J. 217 (2003). "Retaliatory action" is statutorily defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e).

Defendant does not challenge that Timek proved the first two factors. It argues there was insufficient evidence to establish he was subject to an adverse employment action that was causally related to his whistle-blowing activity thus warranting the grant of its motion for judgment notwithstanding the verdict. In reviewing the trial court's determination of the motion for judgment notwithstanding the verdict, we accept as true all evidence supporting Timek and accord him all reasonable inferences arising out of that evidence. Cutler v. Dorn, 196 N.J. 419, 425 n.3 (2008); see also Delvecchio v. Twp. of Bridgewater, 224 N.J. 559, 582 n.7 (2016).

Timek was a K-9 officer on March 22, 2012, when, after responding to a call near a bar in Atlantic City called Proud Mary's,[1] he verbally reported to Sergeant Sean Scanlon at the scene what he perceived as misconduct by another sergeant (the Proud Mary sergeant) who, after speaking to family members of a suspect who appeared to have been driving while intoxicated and resisted officers' efforts to take him into custody – resulting in an injury to one officer – ordered subordinate officers to charge the suspect with only a disorderly conduct offense and not with criminal offenses for resisting arrest and assaulting a police officer or with driving under the influence. Although the suspect was believed to be under the influence of a controlled dangerous substance, the Proud Mary sergeant cancelled an officer's call for an ambulance, thereby preventing the collection of evidence to prove the suspect was driving under the influence. Shortly after the Proud Mary incident, towards the end of Timek's shift, Timek continued his conversation with Scanlon and told him he believed the Proud Mary sergeant was attempting to cover up the suspect's crimes.

Timek contacted Sergeant Lee Hendricks of the Internal Affairs Unit the next day and reported his belief that the Proud Mary sergeant committed official

---

[1] Because of the location of the incident, the parties refer to this as the Proud Mary or Proud Mary's incident; a designation we follow.

misconduct. He later reported the incident to the Atlantic County Prosecutor's Office. After no action was taken, Timek submitted a written report on April 5, 2012 to his K-9 supervisor, Sergeant Daryl Hall, and sent copies to the prosecutor's office, the internal affairs unit, and to his attorney. Within an hour, Timek was summoned to Lieutenant Gregory Anderson's office where, in Hall's presence, Anderson, with Timek's report in hand, asked Timek if he was sure he wanted the report to go up the chain of command because "this is the type of thing that [he] can lose [his] dog for."

Timek, in an interview a month or two after the Proud Mary incident, recounted his recollection of the Proud Mary sergeant's misconduct to Hendricks. Internal affairs eventually conducted an investigation and found the allegations against that sergeant were not sustained.

Although Timek alleged numerous discrete adverse employment actions, the trial court allowed the jury to consider only two: his reassignment out of the K-9 unit following his promotion to sergeant in May 2012 and a ninety-day suspension without pay in connection with Timek's use of force against an arrestee in May 2013.

Defendant argues Timek's reassignment – an act of managerial prerogative based on the police chief's determination that he needed sergeants in the patrol

division – followed Timek's promotion to sergeant and that it was Timek's choice to accept the promotion or remain in the K-9 unit; and that Timek was allowed to adopt the dog. Defendant also contends Timek received a substantial salary increase as a result of the promotion. Citing Klein v. University of Medicine and Dentistry of New Jersey, 377 N.J. Super. 28, 46 (App. Div. 2005), defendant argues Timek's reassignment from the K-9 unit at most resulted in a "bruised ego" which this court previously determined is not enough to establish a CEPA claim.

Defendant's arguments, however, do not account for Timek's proofs that no prior promotion of a K-9 unit member resulted in a reassignment;[2] the reassignment resulted in the loss of compensated time and the use of a take-home, maintained police vehicle; and only the chief's testimony – unsupported by any policy, plan or other proof of the need for patrol sergeants, and refuted by Hall's testimony that "it would have been a loss to the police department and the city to not have that dog follow [Timek] just because of a promotion" – justified Timek's reassignment. Although actions that "result in a bruised ego or injured pride on the part of the employee," are not considered actionable,

---

[2] In its reply brief, defendant claims an officer, whose name we omit, was reassigned upon his promotion. Defendant's record cite for that claim, however, does not support it.

A-5452-16T3

retaliatory acts, Beasley v. Passaic Cty., 377 N.J. Super. 585, 607 (App. Div. 2005) (quoting Klein, 377 N.J. Super. at 46), "a withdrawal of benefits formerly provided to an employee" is, Maimone v. City of Atl. City, 188 N.J. 221, 235-36 (2006).

Timek was next in line on the civil service promotional list for sergeants prior to the Proud Mary incident. His promotion, therefore, is of no moment; defendant was effectively bound to promote him. But his reassignment, and attendant loss of benefits – on the heels of Anderson's comment that the filing of the report critical of the Proud Mary sergeant was "the type of thing that [he] can lose [his] dog for" – is evidence supportive of Timek's arguments against the motion for a judgment notwithstanding the verdict. An adverse employment action includes "non-temporary adverse change[s] in employment status or the terms and conditions of employment." Victor v. State, 401 N.J. Super. 596, 616 (App. Div. 2008), aff'd as modified, 203 N.J. 383 (2010). Accepting that evidence as true and according Timek the benefit of all favorable inferences which can reasonably and legitimately be deduced therefrom, we determine reasonable minds could differ as to whether defendant's actions were retaliatory violations of CEPA. Dolson v. Anastasia, 55 N.J. 2, 5 (1969). Like the trial court, we are "not concerned with the worth, nature or extent (beyond a scintilla)

of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Id. at 5-6.

That same evidence convinces us to reject defendant's argument that the trial court's dismissal of Timek's complaint against the chief of police[3] who reassigned him requires dismissal of the complaint against defendant because "the sole basis to impose liability on [defendant] was that of vicarious liability" based on the chief's actions and "an employer cannot be held liable to a greater degree than its agent." Liability against defendant was not based solely on the chief's involvement. Because of Anderson's actions in connection with both the Proud Mary incident and the excessive force incident, we need not determine if defendant's employer-agent argument, relying on Kelley v. Curtiss, 16 N.J. 265 (1954), is applicable to CEPA cases; the chief's actions were not the sole basis to impose liability. The jury's verdict was based on a consideration of both adverse employment actions as reflected on the verdict sheet in the second question which queried:

> Has the plaintiff, Frank Timek, established by a preponderance of the evidence that [defendant] promoted plaintiff to [s]ergeant and refused to allow him to remain in K9 and reversed the hearing officer's determination exonerating Sergeant Timek from the

---

[3] Timek also filed suit against the police chief. The trial court dismissed that portion of the complaint after Timek rested.

complaint of excessive use of force because Sergeant Timek reported to [internal affairs] and/or the Atlantic County Prosecutor's Office that [the Proud Mary sergeant] was engaged in illegal activity involving the investigation, arrest and charging of [the suspect] outside Proud Mary's Tavern on March 22, 2012?

[(emphasis added).]

Timek's ninety-day suspension was imposed after the Internal Affairs Unit, headed by Anderson who had been promoted to captain, investigated an incident, captured on surveillance footage, where Timek struck a handcuffed, intoxicated arrestee's face. Timek contended that he reflexively retaliated when the man tried to grab Timek's genitals. Timek received a notice of disciplinary action charging him with "[c]onduct unbecoming a public employee, neglect of duty, other sufficient cause, misconduct under New Jersey Title XL, conduct unbecoming a police officer under the common law of the State of [N]ew Jersey, use of force, performance of duty, obedience to laws and regulations."

At a departmental hearing, Lieutenant Eric Scheffler, the department's training officer with more than twenty years of experience in use-of-force training, testified Timek acted reasonably under the circumstances. The city-appointed hearing officer concluded the City failed to meet its burden of proof, finding from the evidence: the arrestee was uncooperative and resistant to Timek's efforts to remove him from the premises; the video showed Timek's hips

move backwards, consistent with his contention the arrestee grabbed for his genitals; and Timek's credibility was bolstered because, prior to explaining his reason for striking the arrestee, he could not have known the arrestee's hands were blocked from the camera by the other officer present. The hearing officer recommended that the charges against Timek be dismissed.

The City business administrator, acting as the City's appropriate authority, rejected the hearing officer's recommendation and Timek was suspended without pay on February 27, 2015. Defendant contends there was no causal connection between Timek's suspension in 2015 by the business administrator, who was not even employed by defendant at the time of the Proud Mary incident, and Timek's protected activity. Again, we accept Timek's evidence as true and accord him the benefit of all favorable inferences which can reasonably and legitimately be deduced therefrom. Dolson, 55 N.J. at 5. The jury had the opportunity to view the tape and hear Scheffler's opinion that Timek responded appropriately in employing force, including Scheffler's response during cross-examination that reasonable minds could differ as to whether excessive force was used.

Likewise, we determine reasonable minds could differ as to whether defendant's actions were retaliatory violations of CEPA. Ibid. Anderson, who

had previously told Timek he could lose his dog if he filed his report regarding the Proud Mary sergeant's misconduct, headed the unit which both investigated the use of force allegation and presented evidence against Timek at the disciplinary hearing. Further, the jury heard testimony from Domenico Raddi that he called Anderson after he heard Timek was going to be suspended. Raddi asked Anderson who had the final "sign off" on the suspension; Anderson replied that he did. Raddi testified that Anderson "started rambling on about a report that [Timek] had submitted about" the Proud Mary sergeant and "[b]ecause of this report, . . . [Timek] was going to be punished and if he never would have submitted a report, more than likely it never would have went down like that."

The "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference"; they are subject to de novo review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). In reviewing the record, we are cognizant that the purpose of New Jersey's CEPA statute "is to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994). Consistent with

11

that purpose, "'CEPA must be considered "remedial" legislation and therefore should be construed liberally to effectuate its important social goal.'" Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448 (2003) (quoting Abbamont, 138 N.J. at 431). "[B]earing in mind that 'the trial court's "action[s] should not be disturbed unless it clearly and unequivocally appears there was a manifest denial of justice under the law,"'" Victor, 401 N.J. Super. at 606 (second alternation in original) (quoting Dolson, 55 N.J. at 8), and after our de novo review of this record, we determine the motion for judgment notwithstanding the verdict was correctly denied.

Defendant for the first time in its reply brief argues it is entitled to a new trial because the trial court "relied on instances that did not rise to the level of an adverse employment decision and contradicted [its] earlier decision" to limit the jury's consideration to two adverse employment actions in deciding defendant's motion for judgment notwithstanding the verdict. We will not address this issue, improperly raised for the first time in a reply brief. A.D. v. Morris Cty. Bd. of Soc. Servs., 353 N.J. Super. 26, 30-31 (App. Div. 2002).

Defendant also contends the trial court's admission of hearsay on two occasions requires a new trial. In the first instance, after Timek responded to his counsel's request on redirect examination to read the portion of Timek's

deposition transcript that recounted what Anderson told him about the consequences of filing the report critical of the sergeant in the Proud Mary incident, the police chief's counsel asked questions on recross establishing that there was no reference in Timek's complaint, or his answers to interrogatories, to Anderson's statement to Timek about losing his dog, and that Timek did not recall revealing what Anderson said until Timek's deposition. The following colloquy ensued:

> [CHIEF'S COUNSEL:] And then you said when you read those passages, both from your deposition and the complaint, that Lieutenant Anderson and [the chief] was trying to quash your complaint. Did you have a conversation with [the chief] or overhear a conversation by [the chief] where he indicated anything about quashing your complaint?
>
> [TIMEK:] No, I did not.
>
> [CHIEF'S COUNSEL:] Did anybody ever tell you they heard from [the chief] or overheard [the chief] saying anything about quashing your complaint?

At that point Timek appealed to the trial court anticipating his answer would draw an objection.

> [TIMEK:] Your Honor?
>
> THE COURT: Answer the question.
>
> [TIMEK:] No, Your Honor.

THE COURT: I know exactly what you're saying. Answer the question.

[TIMEK:] Yes.

[CHIEF'S COUNSEL:] About quashing the complaint? That's my question, quashing the complaint.

[TIMEK:] I'm trying not to raise an objection.

THE COURT: Don't worry about objections. Let [the chief's counsel] and I worry about that. Answer the question truthfully.

The trial court instructed Timek to answer the question; defendant now complains Timek's response was hearsay:

Raddi informed me that when he spoke to . . . Anderson, that [the chief] was present in the office with Anderson prior to the discipline being established, the suspension being handed out, prior to him being retired, that [the chief] was in the office with Anderson and the solicitor and it was at that point that they agreed I was going to – I was going to take a hit. I was going to be suspended for this prior to it even being investigated. So, yes, I did hear that.

Defendant's counsel did not object. The chief's counsel then asked, "And you were going to take a hit for what?" Timek answered, "That I was going to be suspended for this incident prior to it even being investigated. That was something that Anderson allegedly told . . . Raddi." The chief's counsel complained to the court that the answer was not responsive. Counsel claimed

14

the complaint to which he was referring involved the incident of misconduct by the Proud Mary sergeant and that Timek was instead testifying about his suspension. The court disagreed. The chief's counsel asked Timek, "You're saying that had to do with the Proud Mary incident?" Timek said "all of this, this entire five years, everything that I've testified to has to do with the Proud Mary incident."

All counsel went to sidebar where the trial court explained that counsel's question was much broader than a question regarding Timek's deposition about the meeting with Anderson. The chief's counsel said simply, "Okay." Defendant's counsel said nothing. The sidebar ended, the chief's counsel had no further questions; neither did defendant's counsel.

We do not see that this issue was raised before the trial court by defendant in its motion for new trial. Timek, however, responded to this issue, first raised on appeal, in its merits brief. As such, we will consider it. Inasmuch as defendant's counsel did not object to the elicited hearsay, we review the admitted evidence for plain error. R. 2:10-2; State v. Frisby, 174 N.J. 583, 591 (2002). Considering the circumstances under which the evidence was presented, we determine its admission was not "of such a nature as to have been clearly capable

of producing an unjust result." State v. Macron, 57 N.J. 325, 337 (1971) (quoting R. 2:10-2).

The evidence was not elicited by Timek's attorney. Indeed, Timek was hesitant to answer the question. Timek negatively responded to the chief's counsel's question about whether he had heard the chief "indicate[] anything about quashing [Timek's] complaint." The chief's counsel then asked, "Did anybody ever tell you they heard from [the chief] or overheard [the chief] saying anything about quashing your complaint?" At sidebar, the chief's counsel explained that his question pertained to Timek's deposition testimony "which had to do with the meeting with Anderson." The trial court, however, determined the "question was much broader than that." The chief's counsel said only, "Okay," and the sidebar was concluded.

Again, defendant's attorney did not voice an objection or request a limiting instruction in open court or at sidebar. And defendant does not point to any portion of the record manifesting that the elicited hearsay was emphasized by Timek's counsel.

Certainly the trial court's gatekeeping intervention would have been required if Timek's counsel had sought to introduce the hearsay testimony or if he highlighted that evidence in advancing Timek's claim. Under these facts,

16

however, a manifest denial of justice did not result from the solitary hearsay statement.

Defendant also argues that Hall was permitted to testify that Anderson told Timek that if he filed the Proud Mary incident report "they're going to take your dog for this."  After a reminder from the chief's counsel,[4] the trial court instructed the jury:

> Okay.  You heard me talk yesterday about hearsay and you also heard me talk yesterday about use of evidence and how it can be used.  Sometimes evidence could be used for certain purposes, but not for other purposes.  In addition, evidence can be admissible against one party, but not another party.  Now, you heard the testimony from . . . Hall.  He recalls a conversation that occurred where he says Lieutenant Anderson made certain statements about, quote, they, unquote, are not going to allow you to keep the dog.  They is not attributable to a particular individual, specifically, [the chief].  So it would be inappropriate for you to conclude, if you find and I understand there's a credibility contest about what was said at that meeting between Anderson, Timek and Hall, but if you find that I'm assuming Timek's testimony will be the same as Sergeant Hall's, if you find that that testimony is to believed you cannot use it as establishing potential liability on the part of [the chief] because his name is not mentioned in the conversation.  But you may be able to use it for purposes of assessing, if you find it to be credible and if you find it to be useful in evaluating the case,

---

[4]  Neither party cites to any portion of the record in which there was a discussion about the limiting instruction.  Defendant does not argue that the trial court's instruction was erroneous.

A-5452-16T3

> assessing the claim that . . . Timek has made against the City.

Again, defendant's counsel did not object.

As we recognized in Beasley, "[A] statement by a party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship is admissible in evidence against the party." 377 N.J. Super. at 603 (alternation in original) (quoting In re Opinion 668 of the Advisory Comm. on Prof'l Ethics, 134 N.J. 294, 300 (1993)).  Timek testified that Anderson said his report was "the type of thing that you can lose your dog for in so many words."  As the trial court cautioned, the jury had to determine Anderson's exact words.  If he, himself, warned Timek about the consequences of filing the report, that statement, made by Timek's supervisor's supervisor – who called Timek in from his patrol duties after learning of the report – was admissible against defendant under Rule 803(b)(4).  N.J.R.E. 803(b)(4).

Although we do not discern that the trial court abused its discretion in allowing the hearsay statements, Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008), especially without any objection from defendant's counsel, we determine their admission, even if improvident, does not raise a real and sufficient possibility of an unjust verdict "to raise a reasonable doubt as to whether the error led the

jury to a result it otherwise might not have reached." Beasley, 377 N.J. Super. at 604.

Turning to Timek's cross-appeal, in denying Timek's claim for punitive damages the trial court admitted "struggling with . . . the concept that clearly entitlement to punitive damages in . . . a CEPA case requires that the evidence in the case establish particularly egregious conduct beyond what would be required to be established in order to satisfy the cause of action." It professed that it was "extremely difficult . . . to articulate a test to be employed as to when punitive damages would be available and when they would not" and likened it to the difficulty the Supreme Court faced in defining pornography, Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart, J., concurring), before concluding, "I just don't think that this is a punitive damage case."

In essence, the trial court dismissed Timek's claim for punitive damages after all parties had rested. Our review, therefore,

> is guided by summary judgment principles, the ultimate issue being "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On appeal, we apply the same standard as the trial court. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). All legitimate inferences must

19

be drawn in favor of the non-moving party. R. 4:46-2(c). In this context, we must determine whether plaintiff has made out a prima facie case of entitlement to punitive damages.

[Dong v. Alape, 361 N.J. Super. 106, 111-12 (App. Div. 2003) (footnote omitted).]

Punitive damages in CEPA cases are provided by statute, N.J.S.A. 34:19-5; Longo v. Pleasure Prods., Inc., 215 N.J. 48, 57 (2013), to ensure "deterrence of egregious misconduct and the punishment of the offender," Herman v. Sunshine Chem. Specialties, Inc., 133 N.J. 329, 337 (1993). The Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17, permits the award of punitive damages only if:

> [t]he plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. The burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.
>
> [N.J.S.A. 2A:15-5.12(a).]

"[P]unitive damages may be awarded only if compensatory damages have been awarded in the first stage of the trial." Rusak v. Ryan Auto., L.L.C., 418 N.J. Super. 107, 118 (App. Div. 2011) (quoting N.J.S.A. 2A:15-5.13(c)).

In addition to these statutory requirements, our Supreme Court has "imposed a higher standard of liability for punitive damages" in CEPA cases just as it has for Law Against Discrimination cases. Abbamont, 138 N.J. at 419. It has instructed: punitive damages "are to be awarded when the wrongdoer's conduct is especially egregious but only in the event of actual participation by upper management or willful indifference." Longo, 215 N.J. at 58-59 (quoting Abbamont, 138 N.J. at 419). The Court in Longo "recognized that 'the concept of egregiousness does not lend itself to neat or precise definitions.'" Id. at 59 (quoting Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 274 (2010)). Nonetheless, the Court determined as follows:

> We have described the test for egregiousness as being satisfied if plaintiff has proven "an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard for the rights of [plaintiff]." In the alternative, we have found that the evidence will suffice if it demonstrates that defendant acted with "actual malice."
>
> [Quinlan, 204 N.J. at 274 (alteration in original) (first quoting Rendine v. Pantzer, 141 N.J. 292, 314 (1995); then quoting Herman, 133 N.J. at 329)].

We need not repeat the evidence which, in the light most favorable to Timek, together with all inferences drawn in his favor, establish that Anderson, who held an upper management rank in defendant's police department, was

21

behind two adverse employment actions which – as the jury determined – caused Timek compensatory damages for economic loss and emotional distress.  Under our standard of review, Timek made out a sufficient case for presentation of his punitive damages claim to the jury.  We are constrained to remand this matter to allow Timek to present his punitive damages claim to a jury.  We determine only that the jury must decide this issue after receiving proper instructions from the trial court, which is empowered to reduce or eliminate any unreasonable punitive damages award.  N.J.S.A. 2A:15-5.14(a); see Alape, 361 N.J. Super. at 119.

We affirm the judgment entered against defendant but reverse and remand to the trial court for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION